IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | Crim. Action No. 3:21-CR-00159-N |
| | § | |
| SHAUN MARQUS ROBINSON | § | |
| | § | |

## MEMORANDUM OPINION & ORDER

This order addresses Defendant Shaun Marqus Robinson's motion to dismiss [45] the sole count of his Indictment [1], possession of a firearm by a convicted felon, on grounds that 18 U.S.C. § 922(g)(1) is unconstitutional. The Court rejects Robinson's challenges to the statute and denies the motion.

### I. LEGAL STANDARD

Federal Rule of Criminal Procedure 12 allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). One available challenge is "a defect in the indictment," including "failure to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v). "A court may grant a motion to dismiss an indictment if the defect is one essentially a question of law," and "[m]otions to dismiss that question the constitutionality of a statute are such questions of law that are proper for the court to review." *United States v. Perry*, 2023 WL 3021074, at *2 (N.D. Tex. 2023) (citing *United States v. Flores*, 404 F.3d 32, 324 (5th Cir. 2005); *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011)).

MEMORANDUM OPINION & ORDER — PAGE 1

## II.  THE COURT DENIES THE MOTION

Section 922(g)(1) provides, in pertinent part:

(g) It shall be unlawful for any person— (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).   Robinson contends that the statute both exceeds Congress's legislative authority under the Commerce Clause, U.S. CONST. art. I, § 8, cl. 3, and facially violates the Second Amendment, which provides for the right of the people to bear arms. *Id.* amend. II.

### A.  *Section 922(g)(1) Does Not Violate the Commerce Clause*

As Robinson concedes, his Commerce Clause argument is foreclosed.  The Fifth Circuit "has repeatedly emphasized that the constitutionality of § 922(g)(1)" in the context of the Commerce Clause "is not open to question."  *United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013) (quoting *United States v. De Leon*, 170 F.3d 494, 499 (5th Cir. 1999)).  The statute has a sufficient nexus with interstate commerce, even in light of Supreme Court decisions applying a "substantial effects" test.  *See United States v. Daugherty*, 264 F.3d 513, 518 (5th Cir. 2001) (rejecting challenge to section 922(g)(1) based on *United States v. Lopez*, 514 U.S. 549 (1999), and *United States v. Morrison*, 529 U.S. 598 (2000)); *United States v. Schmidt*, 487 F.3d 253, 255 (5th Cir. 2007) (same).  Accordingly, the Court rejects Robinson's Commerce Clause challenge.

### B. Section 922(g)(1) Does Not Violate the Second Amendment

Robinson's second argument is that, following the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), section 922(g)(1) violates the Second Amendment. In *Bruen*, the Court held that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129–30.

Historically, the Supreme Court has recognized "longstanding prohibitions on the possession of firearms by felons" as lawful limitations on the right to bear arms. *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The Fifth Circuit recently explained that *Bruen* did not disturb that precedent: "*Heller*'s reference to 'law-abiding, responsible' citizens meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights," including convicted felons, and "*Bruen*'s reference to 'ordinary, law-abiding' citizens is no different." *United States v. Rahimi*, 61 F.4th 443, 452 (5th Cir. 2023). However, *Rahimi* left unresolved whether *Heller* and *Bruen* should be interpreted to mean that individuals convicted of felonies are excluded from the Second Amendment's coverage altogether, or that their disarmament is constitutionally permissible so long as the Government demonstrates historical support for the specific regulation. *See United States v. Zelaya Hernandez*, 2023 WL 4161203, at *3–4 (N.D. Tex. 2023) ("*Rahimi* seems to at least leave open the possibility that felons are outside of 'the people' protected by the Second Amendment. . . . But *Rahimi* also explicitly endorses an

MEMORANDUM OPINION & ORDER — PAGE 3

approach to the Second Amendment that primarily focuses on the government's power to take the Second Amendment right away, not the right's initial scope.").

There is not yet consensus on which approach to follow. *Compare, e.g.*, *United States v. Charles*, --- F. Supp. 3d ---, 2022 WL 4913900, at *5–10, 12 (W.D. Tex. 2022) (taking the former approach based on the "historical tradition of excluding felons from the rights of 'the people'" and the practical difficulties of the historical comparison otherwise required by *Bruen*) *with Zelaya Hernandez*, 2023 WL 4161203, at *4 ("[T]he Court is hesitant based on current case law and other practical anomalies to definitively conclude felons are outside of the scope of the Second Amendment by way of the term 'the people,'" and "18 U.S.C. § 922(g)(1) plainly implicates the Second Amendment, as it flatly prohibits the possession of any firearm.").

But even under the stricter second approach, the Government has adequately demonstrated that section 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. Because Robinson's motion appears to challenge the statute on its face, the Government may prevail by showing that "[some] set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Government cites that felonies were historically punished by forfeiture of land and personal property, *see* 4 WILLIAM BLACKSTONE, *Commentaries on the Laws of England* 95 (1st ed. 1769), and provides several early examples of both violent and nonviolent felonies. *See, e.g.*, 2 LAWS OF THE STATE OF NEW YORK PASSED AT THE SESSIONS OF THE LEGISLATURE (1785–1788) at 664–65 (1886) (criminalizing burglary, robbery, arson, malicious maiming and wounding, and counterfeiting); 9

MEMORANDUM OPINION & ORDER — PAGE 4

WILLIAM WALLER HENING, STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION OF THE LEGISLATURE 301–02 (1821) (criminalizing forging, counterfeiting, or presenting forged documents for payment); 2 STATUTES AT LARGE OF PENNSYLVANIA FROM 1682 TO 1801 at 12 (1896) (criminalizing arson and rape); 1 THE LAWS OF MARYLAND[,] WITH THE CHARTER, THE BILL OF RIGHTS, THE CONSTITUTION OF THE STATE, AND ITS ALTERATIONS, THE DECLARATION OF INDEPENDENCE, AND THE CONSTITUTION OF THE UNITED STATES, AND ITS AMENDMENTS 79 (1811) (criminalizing "corruptly embezzling, impairing, razing, or altering any will or record").   The Government also points to colonial laws disarming "untrustworthy individuals."  *See Range v. Att'y Gen.*, 53 F.4th 262, 274 (3d Cir. 2022) ("[T]he pertinent historical periods were replete with laws" that "categorically disqualified people from possessing firearms based on a judgment that certain individuals were untrustworthy parties to the nation's social compact."), *vacated, reversed, and remanded*, 69 F.4th 96 (2023) (en banc).

To be sure, "historical consensus on this issue is elusive."  *United States v. Bullock*, 2022 WL 16649175, at \*1 (S.D. Miss. 2022).  The Court is cognizant that judges "are not trained historians," and a "lack [of] both the methodological and substantive knowledge that historians possess" creates a risk of "cherry-pick[ing] the history."  *Id.* at \*1, 3 (citing *Bruen*, 142 S. Ct. at 2177 (Breyer, J., dissenting)).  However, despite numerous challenges to section 922(g)(1) in the wake of *Bruen*, the Court is aware of only two decisions finding that the statute violates the Second Amendment.  *See Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023); *United States v. Bullock*, --- F. Supp. 3d. ---, 2023 WL 4232309 (S.D.

Miss. 2023).  Those courts took considerable care in interpreting *Bruen* and the historical record, but *Range and Bullock* are nevertheless distinguishable here: both addressed as-applied challenges, unlike the motion at bar.  *See Range*, 69 F.4th at 99–100; *Bullock*, 2023 WL 4232309, at \*31.  Persuaded by the Government's sources, and affirmed in that conclusion by the collective wisdom of other courts that have evaluated facial challenges in light of the historical record,[1] this Court also holds that section 922(g)(1) still "passes constitutional muster."  *Zelaya Hernandez*, 2023 WL 4161203, at \*7.

## CONCLUSION

Robinson's constitutional challenges to the statute under which he has been indicted, 18 U.S.C. § 922(g)(1), lack merit.  The Court accordingly denies his motion to dismiss.

---

[1] *See, e.g.*, *United States v. Palmer*, 2023 WL 3313051, at \*1 (N.D. Tex. 2023) (citing ROBERT J. SPITZER, *Gun Law History in the United States and Second Amendment Rights*, 80 LAW & CONTEMP. PROBS. 55, 60 (2017)) ("Some estimates indicate that there were no fewer than eleven laws among the colonies—predating the ratification of the Constitution—regulating or prohibiting the possession of firearms by convicted felons, other 'criminals,' or non-citizens."); *United States v. Melendrez-Machado*, 2023 WL 4003508, at \*8 (W.D. Tex. 2023) ("Loyalty laws fully disarmed certain groups . . . just as § 922(g)(1) fully disarms felons," and they were apparently "enacted at least in part because 'disloyal' groups flouted the rule of law, defying sovereign authority and communal values. Section 922(g)(1) is no different . . . [felons'] disarmament is most naturally justified by their failure to conform to the law."); *United States v. Barber*, 2023 WL 1073667, at \*8 (E.D. Tex. 2023) (quoting *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting)) ("Section 922(g)(1)'s application to dangerous felons . . . easily [satisfies] *Bruen* . . . because the historical record supports the proposition that Congress 'may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety.'").

MEMORANDUM OPINION & ORDER — PAGE 6

Signed June 29, 2023.

David C. Godbey
Chief United States District Judge